UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SIERRA CLUB, a California
nonprofit corporation;
PUGET SOUNDKEEPER ALLIANCE,
a Washington nonprofit
corporation; RE SOURCES FOR
SUSTAINABLE COMMUNITIES, a
Washington nonprofit
corporation; COLUMBIA
RIVERKEEPER, a Washington
nonprofit corporation;
FRIENDS OF THE COLUMBIA
GORGE, INC., dba FRIENDS OF
THE COLUMBIA GORGE, an
Oregon nonprofit
corporation; SPOKANE
RIVERKEEPER; NATURAL
RESOURCES DEFENSE COUNCIL, a
New York nonprofit
corporation,

        Plaintiffs,

  vs.

BNSF RAILWAY COMPANY, a
Delaware corporation,

        Defendant.

NO.  1:13-cv-00272-LRS

**ORDER RE DEFENDANT'S MOTION TO
DISMISS**

    **BEFORE THE COURT** is Defendant's Motion to Dismiss, ECF No. 23,

filed on October 7, 2013 and argued on December 12, 2013 in Yakima,

Washington.  Defendant BNSF has moved for an order dismissing with

///

ORDER - 1

prejudice portions of Plaintiff's Complaint (ECF No. 1) pursuant to Fed.R.Civ.P. 12(b)(3) and 12(b)(6).

**I.   INTRODUCTION**

This is an action by seven environmental groups—Sierra Club and others ("Plaintiffs")—against the BNSF Railway Company ("BNSF or"Defendant") for violations of the Clean Water Act ("CWA") by operating rail lines in the State of Washington which are used for transporting coal. Plaintiffs allege that rail trains and rail cars ("rolling stock") are considered point sources under the CWA. Plaintiffs allege point sources include each and every train and rail car transporting coal.

Defendant asserts that: 1) all claims based on alleged discharges outside the Eastern District of Washington should be dismissed; 2) Plaintiffs' allegations which focus on purported discharges "adjacent to, over, and in proximity to" waters exceed the scope of the CWA because they include release of coal materials to land, not water; and 3) Plaintiffs' claims premised on (a) nonpoint source pollution associated with unconfined storm water runoff and diffuse wind and (b) unregulated storm water discharges from trains and rail cars should be dismissed.  At the hearing, Defendant clarified that the alleged discharge of coal pollutants "into waters" was not the subject of its motion.

**II.  BACKGROUND**

**A. The Clean Water Act**

Congress enacted the CWA in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."

ORDER - 2

Consistent with this purpose, the CWA prohibits "the discharge of any pollutant by any person" to navigable waters "except in compliance" with other provisions of the CWA, including the National Pollution Discharge Elimination System ("NPDES") permitting requirements (codified at 33 U.S.C. § 1342). The NPDES "requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters." The phrase "discharge of any pollutant" is "defined broadly" to mean "any addition of any pollutant to navigable waters from any point source." "Pollutant" is defined "to include not only traditional contaminates but also solids such as dredged soil, . . . rock, sand, [and] cellar dirt." The term "navigable waters" means "the waters of the United States, including territorial seas." The combined effect of these provisions is that "[t]he CWA prohibits the discharge of any pollutant from a point source into navigable waters of the United States without an NPDES permit."

The Environmental Protection Agency ("EPA") is the regulatory authority tasked with administering the NPDES permitting system for each state. However, EPA may delegate its permitting authority to individual states, after which state officials have primary responsibility, with EPA oversight, for reviewing and approving NPDES permits. EPA delegated its permitting authority to the State of Washington. Washington administers its program through the Washington Department of Ecology ("WADOE").

**B.  BNSF Railway Company**

BNSF is a Class I railroad and a common carrier that transports

ORDER - 3

intermodal freight and bulk cargo throughout the United States and into Canada. As a common carrier, BNSF must "provide the transportation of service on reasonable request" and cannot refuse to transport any item, including coal, when such a reasonable request is made. 49 U.S.C. § 11101(a). BNSF also is subject to significant restrictions and oversight by the Surface Transportation Board ("STB") as a common carrier, including approval of any requirements BNSF might wish to impose on the transport of its customers' freight. 49 U.S.C. § 10501(a)-(b); *Bhd. of Maint. of Way Employes Div. v. Burlington Northern Santa Fe Ry. Co.*, 596 F.3d 1217, 1220 (10th Cir. 2010) (STB "imposes a comprehensive scheme of regulation on rail carriers"). Plaintiffs have alleged that the majority of coal transported by BNSF comes from the Powder River Basin ("PRB"), a geologic region located in southeast Montana and northeast Wyoming known for its coal deposits. ECF No. 1, ¶ 33.

### C. Relevant Alleged Discharge Events

Under the "Facts" portion of Plaintiffs' Complaint, the following paragraphs describe the alleged discharge events Plaintiffs complain of:

> 53. Defendants have discharged, are discharging, and will continue to discharge coal pollutants into waters of the U.S. by each and every one of the defendants' trains and rail cars that carry coal.

> 54. Each and every train and each and every rail car discharges coal pollutants to waters of the United States when traveling adjacent to, over, and in proximity to waters of the United States.

> 55. Defendants discharge coal pollutants into waters of the U.S. in the State of Washington through holes in the bottoms and sides of the rail cars and by spillage or ejection from the open

ORDER – 4

tops of the rail cars and trains.

56. Defendants discharge coal pollutants during
the transportation of the coal in both normal and
abnormal operating conditions, and upon loading
and unloading coal.

Complaint, ECF No. 1, at 15.

In the sole Count in Plaintiffs' Complaint, however, the
discharge of pollutants (without a NPDES permit) into waters of the
United States is alleged. **Count 1** reads:

68. All waterways named herein are waters of the
United States protected by the CWA.

69. Defendants did not have and do not retain a
NPDES Permit authorizing their discharges of coal
pollutants into such waterways.

70. Defendants have discharged coal pollutants
from the operation of rail cars and trains into,
at least, the listed waterways from April 2008
(and for many years prior to 2008) to present.
Such operations and discharges are continuing and
are likely to continue into the future.

71. Each such coal discharge from each rail car
and train into each separate waterway on each
separate day constitutes a separate violation of
the CWA.

**III.     LEGAL STANDARDS**

To survive a motion to dismiss under Fed.R.Civ.P. Rule 12(b)(6),
a complaint "must contain sufficient factual matter, accepted as true,
to 'state a claim to relief that is plausible on its face.'" *Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering
such a motion, a court must accept all factual allegations in a
complaint as true, but need not accept as true any legal conclusions.
*Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

///

ORDER - 5

Federal Rule of Civil Procedure 12(b)(3) provides that a complaint may be dismissed for "improper venue." When deciding a motion to dismiss under Rule 12(b)(3), unlike a Rule 12(b)(6) motion, the Court need not accept the pleadings as true and may consider facts outside the pleadings. *See R.A. Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir.1996). Once a defendant raises an objection to venue, the plaintiff bears the burden of establishing that the selected venue is proper. *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1019 (9th Cir.2002). Plaintiff need only make a prima facie showing of proper venue to avoid the defendant's motion to dismiss. *Id.*

## IV. ANALYSIS

The parties, for the most part, do not dispute that coal is a "pollutant," that the Columbia River, and all other waters listed in paragraph 62 of the Complaint[1] constitute navigable "waters," or that the coal cars from which coal and coal dust falls directly into the navigable waters are "point sources."[2] Plaintiffs argue that the only prerequisite to establishing a point source discharge is the ability to trace the pollutant back to a single, identifiable source, i.e. the coal cars. Defendant, however, asserts that the real question is whether the pollution reaches the water through a confined, discrete conveyance. Case law clearly establishes that "point sources are not distinguished by the kind of pollution they create or by the activity

---

[1] Complaint, ECF No. 1, at 17.

[2] Defendant BNSF does dispute that trains and rail cars at issue here *independently* qualify as "point sources" under the CWA and reserves the right to challenge that at a later time.

ORDER - 6

causing the pollution, but rather by whether the pollution reaches the water through a confined, discrete conveyance." *Trustees for Alaska v. EPA*, 749 F.2d 549, 558 (9th Cir. 1984).

The Clean Water Act's definition of a "point source" provides that a "point source" is

> *any discernible, confined and discrete conveyance*, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include return flows from irrigated agriculture.

33 U.S.C. s 1362(14)[emphasis added].

The law is also clear that a plaintiff seeking to establish a point source discharge, even in the context of airborne pollution, must prove more than that the pollutant originated from an identifiable source. Regardless of where the pollution originates, a plaintiff must prove that "the pollut[ant] reache[d] the water through a confined, discrete conveyance." *U.S. v. Earth Sciences*, 599 F.2d 368, 373 (10th Cir. 1979).

For example, the Ninth Circuit in *Sierra Club v. Abston Contr. Co., Inc*., 620 F.2d 41, 45 (1980) held that gravity flow, resulting in a discharge into a navigable body of water, may be part of a point source discharge if the miner at least initially collected or channeled the water and other materials. A point source of pollution may also be present where miners design spoil piles from discarded overburden such that, during periods of precipitation, erosion of spoil pile walls results in discharges into a navigable body of water by means of ditches, gullies and similar conveyances, even if the

ORDER - 7

miners have done nothing beyond the mere collection of rock and other materials. The ultimate question is whether pollutants were discharged from "discernible, confined, and discrete conveyance(s)" either by gravitational or nongravitational means. Nothing in the Act relieves miners from liability simply because the operators did not actually construct those conveyances, so long as they are reasonably likely to be the means by which pollutants are ultimately deposited into a navigable body of water. Conveyances of pollution formed either as a result of natural erosion or by material means, and which constitute a component of a mine drainage system, may fit the statutory definition and thereby subject the operators to liability under the Act.

But in *Greater Yellowstone Coalition v. Lewis*, 628 F.3d 1143, 1153 (9th Cir.2010), the Ninth Circuit held that waste rock pits were not point sources within the meaning of the CWA because water seepage from the pits containing waste rock that eventually made its way to surface waters was "not collected or channeled."

In *Concerned Area Residents for Environment v. Southview Farm*, 34 F.3d 114 (2nd Cir.1994), a suit arising out of the liquid manure spreading operations of a large dairy farm in western New York, plaintiffs argued that the manure spreading operations were a "point source" from which pollutants were discharged into a nearby river. The liquid manure was spread by tanker trucks over fields, after which some manure flowed into a swale (a low place in a tract of land) on the property. From the swale, the manure flowed through a pipe, which led to a ditch, which led to a stream that fed into the river. Defendants argued that the manure-spreading facilities were not "point

ORDER - 8

sources" because the pollutants naturally flowed to the swale and reached the river "in too diffuse a manner to create a point source discharge." *Id*. at 118. The Second Circuit found in favor of plaintiffs concluding that even if the flow from fields into the swale could be characterized as diffuse runoff, the pollutant was thereafter collected in the swale and sufficiently channeled to constitute discharge from a point source. *Id*. at 118-19. The court alternatively found that the tanker trucks themselves were point sources because they were used to collect the manure and discharge it onto the fields, after which it directly flowed, via the swale, pipe and stream, into the river. *Id*.

In *Cordiano v. Metacon Gun Club*, 575 F.3d 199 (2nd Cir.2009), the Second Circuit rejected the argument that "windblown pollutants from any identifiable source, whether channeled or not, are subject to the CWA permit requirement." *Id*. at 224. In *Cordiano*, a shooting range was sued for discharging lead munitions into bordering wetlands without a permit. Plaintiffs argued that the berm into which bullets were fired was a point source because the wind carried lead dust from the berm to the wetlands. *Id*. at 224-25. The court rejected plaintiffs' argument stating that the berm simply cannot be described as a "discernible, confined and discrete conveyance" with respect to lead that is carried by the wind, some portion of which may happen to land on nearby wetlands. *Id*.

In a handful of cases that address pesticide spraying, the courts found that pesticides channeled through a spraying apparatus on a truck or plane, when sprayed **directly over water**, met the statutory

ORDER - 9

definition of a point source discharge.  See *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Forsgren*, 309 F.3d 1181 (9th Cir.2002); *Peconic Baykeeper, Inc. v. Suffolk County*, 600 F.3d 180 (2nd Cir.2010); and *No Spray Coalition, Inc. v. City of New York*, 2005 WL 1354041 (S.D.N.Y. June 8, 2005)(unpublished).

Based on the parties' respective positions at the hearing, the issue appears to be whether coal from rail cars that falls onto land, rather than directly into the waters, offends the Clean Water Act. Defendant's main contention is that because Plaintiffs do not allege the existence of any point source besides rail cars and trains, their allegations of discharges to waterbodies "adjacent to" or "in proximity to" BNSF's tracks (including all allegations of discharges to land or the tracks themselves) fail to state a claim under 33 U.S.C. §§ 1251-1387, commonly known as the Clean Water Act, and must be dismissed.

Essentially, Defendant BNSF takes issue with language recited in the "Facts" portion of Plaintiffs' Complaint (**adjacent to, over, and in proximity to waters),** however, Plaintiffs' sole claim alleges "discharged coal pollutants from the operation of rail cars and trains **into**, at least, the listed waterways ...".  The Court therefore finds it necessary to allow Plaintiffs the opportunity at this early juncture to develop facts that will allow their claim(s) to either stand or fall, based on the statutory definition of a point source discharge.  As part of their case, Plaintiffs will need to show that BNSF's railway illegally introduced pollutants into navigable waters without a permit.

ORDER - 10

While not contesting venue in the Eastern District of Washington for alleged sources of pollution arising in this district, BNSF takes issue with any claim in this court involving pollution sources arising elsewhere, citing 33 U.S.C. § 1365(c)(1) which provides:

> (1) Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located.

Plaintiffs note that the relatively few cases dealing with the issue of venue do not involve pollution claims where the source of pollution comes from one mobile source (i.e., rolling stock) traveling over and through numerous jurisdictions. The absence of definitive case law cited by either Plaintiffs or BNSF combined with the suggestion for transfer found in the companion case of *Sierra Club, et al., v. BNSF Railway Company, et al.*, case number 2:13-cv-00967-JCC pending in the Western District of Washington implies that this issue should be decided by the court which may end up hearing the two cases, judicial economy and avoidance of conflicting holdings would be served by such an arrangement. Having the foregoing in mind, BNSF's motion to dismiss (ECF No. 23) on venue grounds is DENIED, without prejudice.

As noted in the pleadings, BNSF suggests that Plaintiffs are attempting to regulate storm water which is otherwise not subject to regulation under the facts of this case. However, Plaintiffs assert that their suit is brought solely under the Clean Water Act and the case law developed in support thereof. The state of the record precludes a  finding in favor of BNSF on this issue at the present time.

ORDER - 11

**V.    CONCLUSION**

Defendant BNSF Railway Company's Motion to Dismiss Pursuant to FRCP 12(B)(3) and 12(B)(6) is DENIED.

**IT IS SO ORDERED.**   The District Court Executive is directed to enter this Order.

**DATED** this 2nd  day of January, 2014.

*s/Lonny R. Suko*
_____
                    LONNY R. SUKO
           SENIOR UNITED STATES DISTRICT JUDGE

ORDER – 12